**Daniel H. HEYING, Appellant (Petitioner Below),**

v.

**STATE of Indiana, Appellee (Respondent Below).**

No. 46A04–8612–CR–362.

Court of Appeals of Indiana, Third District.

Nov. 30, 1987.

Rehearing Denied Jan. 11, 1988.

Susan K. Carpenter, Public Defender, Kathleen A. LeSeur, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Daniel Heying appeals his conviction of operating a motor vehicle after having been adjudged an habitual traffic offender. Two constitutional issues are raised by this appeal:

(1) whether the statute under which Heying was convicted is unconstitutionally vague in that it failed to inform him that he was prohibited from operating a motor vehicle in the State of Indiana even if he possessed a valid driver's license from another state; and

(2) whether the statute under which Heying was convicted violated Heying's fundamental right to travel by prohibiting him from operating a motor vehicle in the State of Indiana for life.

Daniel Heying was adjudged an habitual traffic offender on April 24, 1978 by the LaPorte Circuit Court, which then ordered Heying not to operate a motor vehicle on the streets and highways of Indiana for a period of ten years. After this order was entered, Heying apparently moved to California and obtained a valid driver's license from that state. On April 6, 1983 a LaPorte police officer stopped a vehicle which had disregarded a stop sign. Heying was driving the vehicle and produced his California driver's license. A license check revealed that Heying was an habitual traffic offender and the officer arrested him.

Heying first argues that the statute under which he was convicted was unconstitutionally vague because it failed to inform him that he was prohibited from operating a motor vehicle in the State of Indiana even if he had a valid driver's license from another state. This statute, in relevant part, provided:

"A person found to be an habitual traffic offender who operates a motor vehicle which the order of the court prohibiting operation remains in effect commits a Class D felony. In addition, a conviction of this felony shall work a forfeiture of the privilege of operating a motor vehicle for the life of the person so convicted."

IND.CODE § 9–4–13–14 (1982) (repealed by P.L. 79–1984 Sec. 2; current version at IND.CODE § 9–12–3–1).

■ A vague penal statute violates the due process guarantee of the Fourteenth Amendment of the United States Constitution. *Miller v. State* (1983), Ind.App., 449 N.E.2d 1119, 1121.

"In order to satisfy due process requirements, a statute must be so explicit as to inform individuals of ordinary intelligence of the consequences of their conduct. It must not cause men of common intelligence to guess at its meaning or differ as to its application."

Id. (citing *Wallman v. State* (1981), Ind. App., 419 N.E.2d 1346).

Heying relies on *State v. Churchill* (1979), Ind.App., 388 N.E.2d 586 for the proposition that IND.CODE § 9–4–13–1 et seq. merely suspended the Indiana driver's licenses of individuals adjudged as habitual traffic offenders and therefore an habitual traffic offender who has a valid driver's license from another state cannot be convicted of violating IND.CODE § 9–4–13–14. A close reading of *Churchill* leads to an inapposite conclusion.

In *Churchill,* the defendant's Indiana driver's license was suspended for one year. The defendant subsequently moved to Colorado and obtained a driver's license from that state. Approximately three years after the defendant's Indiana driver's license had been suspended, he returned to Indiana and was stopped by a state trooper two or three weeks after his return. Churchill was charged with driving while suspended pursuant to the following statute:

"Any person whose license or permit issued under the provisions of this act has been suspended or revoked as provided by law, and who shall drive any motor vehicle upon the public highways while such license or permit is suspended or revoked, shall be guilty of a misdemeanor."

IND.CODE § 9–1–4–52 (1976) (current version at IND.CODE ANN. § 9–1–4–52 (West 1987 Supp)).

This Court held that the statute prohibited operating a vehicle after revocation of one's license and therefore one could not be convicted of violating the statute if he had a valid out-of-state driver's license. *State v. Churchill, supra,* (citing *State v. French* (1977), 117 N.H. 785, 378 A.2d 1377, 1379). This Court, however, recognized that where a statute prohibits driving after revocation of one's right to drive, the defendant may be convicted of driving after revocation even though he possessed a valid out-of-state license. *Id.* The statute under which Heying was convicted is the latter type. It prohibited "operating a motor vehicle" while a court order "prohibiting operation remains in effect." IND. CODE § 9–4–13–14. Furthermore, the statute under which Heying was adjudged an habitual traffic offender not only operated to revoke Heying's Indiana driver's license but also his right to operate a vehicle in Indiana. This statute, in relevant part, provided:

"If the court finds that the defendant ... is an habitual traffic offender, the court shall so find and adjudge the defendant an habitual traffic offender, and shall by appropriate order direct the person so adjudged to surrender to the court his license to operate a motor vehicle, and by further order direct the person so adjudged not to operate a motor vehicle on the streets and highways of this state for a period of ten (10) years...."

IND.CODE § 9–4–13–10 (1982) (current version at IND.CODE ANN. § 9–12–2–1 (West 1987 Supp.)).

As Heying's right to operate a motor vehicle was revoked under IND. CODE § 9–4–13–10 and he was prohibited from operating a motor vehicle under IND. CODE § 9–4–13–14, Heying could be convicted of violating IND.CODE § 9–4–13–14 even though he possessed a valid California driver's license. The statutes involved in this case clearly informed Heying that he was prohibited from operating a motor vehicle in this state while he was under the court order which revoked that right. IND.CODE § 9–4–13–14 therefore is not unconstitutionally vague.

Heying next argues that because IND.CODE § 9–4–13–14 prohibits him from operating a motor vehicle in Indiana for life, it burdens his fundamental right to travel and therefore the State must show that the statute promoted a compelling state interest and it employed the least restrictive means available. Given the value of possessing a driver's license, proceedings to suspend or revoke that license adjudicate important interests of the licensee. *Bell v. Burson* (1971), 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90. Whether denominated as a right or privilege, the continued possession of a driver's license is an entitlement which cannot be taken away without procedural due process. *Id. See also Ruge v. Kovach* (1984), Ind., 467 N.E. 2d 673; *Hunter v. State* (filed September 30, 1987), Ind.App. No. 20A03–8702–CR–49. In a case involving the temporary pre-conviction suspension of a driver's license, however, our Supreme Court held that the fundamental right to travel does not imply a fundamental right to operate a motor vehicle for purposes of substantive due process and equal protection. *Ruge, supra,* 467 N.E.2d at 678. Courts from other jurisdictions have reached the same conclusion whether the cases this Court located involved denial, temporary suspension, or permanent revocation of a driver's license.

*McGlothen v. Department of Motor Vehicles* (1977), 71 Cal.App.3d 1005, 140 Cal.Rptr. 168 (right to operate a motor vehicle is not fundamental so as to require strict scrutiny for equal protection purposes);

*Heninger v. Charnes* (1980), 200 Colo. 194, 198, 613 P.2d 884, 887 (right to drive does not enjoy status of fundamentality and statute providing for mandatory indefinite revocation of driver's license upon third drunk driving conviction does not burden the fundamental right to travel);

*Smith v. Wilkins* (1985), 75 N.C.App. 483, 331 S.E.2d 159 (fundamental right to travel is not violated by a statute provid-

ing that the state would not issue a driver's license to person whose license had been suspended or revoked in a different jurisdiction);

*State v. Michalski* (1985), 221 Neb. 380, 377 N.W.2d 510, 515 (driving is not a fundamental right and a statute providing for the permanent revocation of a driver's license upon one's third drunk driving conviction does not impair the right to travel);

*Commonwealth v. Slater* (1983), 75 Pa. Cmwlth.Ct. 310, 462 A.2d 870 (possession of a license to drive a school bus is not a fundamental right and rational basis exists for regulation which denied such a license to an applicant who had a medical history of diabetes);

*Berberian v. Petit* (1977), 118 R.I. 448, 374 A.2d 791 (the right to operate a motor vehicle is not a fundamental one due to its relationship to interstate travel and a rational basis exists for a statute which denies drivers' licenses to those under sixteen years of age);

*Carter v. State* (1986), Tex.App., 702 S.W.2d 774 (revocation of one's driver's license for failure to obey traffic laws does not unconstitutionally burden the fundamental right to travel);

*City of Salina v. Wisden* (1987), Utah, 737 P.2d 981 (Utah Motor Vehicle Code does not violate the fundamental right to travel);

*State v. Scheffel* (1973), 82 Wash.2d 872, 514 P.2d 1052 (statute providing for five-year revocation of driver's license upon three convictions of driving under the influence does not burden the fundamental right to travel as there is no constitutional right to a particular mode of transportation).

*Cf. Berlinghieri v. Director of Motor Vehicles* (1983), Cal., 33 Cal.3d 392, 188 Cal.Rptr. 891, 657 P.2d 383 (driver's license is a "fundamental right" for purposes of applying an independent judgment standard of review to the motor vehicle department's decision to suspend or revoke that license).

Because the right to operate a motor vehicle is not a fundamental one, the State must show only a legitimate rather than a compelling interest. *Vance v. Bradley* (1979), 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171. The purpose of the Habitual Traffic Offenders Act was to keep Indiana highways safe from those who consistently refused to obey our traffic laws. *Owens v. State ex rel. VanNatta* (1978), 178 Ind.App. 406, 382 N.E.2d 1312. Highway safety is not merely a legitimate state interest. It is a compelling one. *Ruge, supra,* 467 N.E.2d 673. IND.CODE § 9–4–13–14, by denying the right or privilege to operate a motor vehicle to those who consistently refused to obey traffic laws, was rationally related to the State's interest in highway safety. IND.CODE § 8 9–4–13–14 did not burden a fundamental right and was rationally related to a legitimate State interest. The statute therefore was constitutional and Heying's conviction under it therefore must be affirmed.

Affirmed.

CONOVER and ROBERTSON, JJ., concur.